Peter R. Afrasiabi (Bar No. 193336)
TURNER GREEN AFRASIABI & ARLEDGE LLP
535 Anton Boulevard, Suite 850
Costa Mesa, California 92626
Telephone:  (714) 434-8750
Facsimile:   (714) 434-8756

Attorneys for Defendants Network Signatures, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOCIETY FOR WORLDWIDE INTERBANK FINANCIAL TELECOMMUNICATION SCRL d/b/a SWIFT, a Belgian Limited Liability Cooperative Company,<br><br>    Plaintiff,<br><br>v.<br><br>NETWORK SIGNATURES, INC., a California corporation,<br><br>    Defendants. | Case No. CV 08-5139 MEJ<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FOR IMPROPER VENUE OR TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA; DECLARATIONS OF HAZIM ANSARI AND PETER AFRASIABI IN SUPPORT THEREOF** |

**TO ALL PARTIES AND THEIR ATTORNEY OF RECORD**

**PLEASE TAKE NOTICE** that, on January 15, 2009, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom B located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Network Signatures, Inc. will ask and hereby does ask this Court to dismiss the pending action under Federal Rule of Civil Procedure 12(b)(3) for improper venue, or transfer the action to the Central District of California under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a).

Network Signatures' motion is based upon the attached Memorandum of Points and Authorities, the Declarations of Hazim Ansari and Peter Afrasiabi, the documents already on file with this Court, and any argument as may be presented by counsel at the hearing.

14023.1

1
2  Dated: December 9, 2008           **TURNER GREEN AFRASIABI & ARLEDGE LLP**
3
4
5                              By:   <u>/s/ Peter R. Afrasiabi</u>
6                                    Peter R. Afrasiabi, Esq.
                                     Attorneys for Defendant Network Signatures. Inc.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Network Signatures, Inc. is an Orange County-based tech company. Network Signatures has developed technology that allows the user to engage in secure online communications simply and inexpensively. This technology is based on a patent owned by the United States Navy, which has been licensed to Network Signatures.

As part of its rights and responsibilities under the patent license agreement, Network Signatures can and is expected to police infringement of the Navy's patent. To that end, Network Signatures has filed twelve patent-infringement actions in the Central District of California; virtually all of those matters have been assigned to a single district judge, the Honorable James V. Selna. (Judge Selna has recused himself from the others.)

Plaintiff SWIFT is a Belgian company which has, apparently, received demands for indemnification from some of the defendants in Network Signatures' Central District of California patent-infringement actions. In this action, SWIFT seeks a declaration that its products do not infringe the Navy's patent as well as a declaration that the patent is invalid. These same issues are pending in the Central District actions.

## II. VENUE IS IMPROPER IN THE NORTHERN DISTRICT

Where venue is improper, Federal Rule of Civil Procedure 12(b)(3) allows the district court to dismiss the action, and 28 U.S.C. § 1406(a) allows a district court to transfer the matter to a court where venue is appropriate. Here, because venue is improper in the Northern District of California, the matter cannot proceed in this Court. This Court should, therefore, either dismiss the action or transfer it to the Central District of California.

SWIFT alleges that venue is proper in this Court under 28 U.S.C. § 1391("Section 1391") (b) & (c) because "a substantial part of the events or omissions giving rise to SWIFT's claim occurred in this district ... Network Signatures is subject to personal jurisdiction in this district, and Network Signatures is found in this district." Complaint at

¶ 6. SWIFT is right that 28 U.S.C. § 1391(b) & (c) control this question,[1] but SWIFT is wrong to conclude that venue is proper under those provisions.

Under Section 1391(b), venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

The fundamental issue under the first prong, Section 1391(b)(1), is where Network Signatures "resides." Section 1391(c) answers that question. Under its provisions, Network Signatures "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts." In other words, this Court must conduct a personal jurisdiction-like analysis to determine whether Network Signatures has sufficient contacts with the Northern District such that it "resides" here for venue purposes.

It does not. Network Signatures' primary place of business is in the Central District of California. Declaration of Hazim Ansari ("Ansari Decl."), ¶ 2. All of Network Signatures' business activities take place within the Central District of California. *Id.* Network Signatures does not have customers, employees, or offices in the Northern District of California. *Id.* As best Network Signatures can tell, it has never conducted any business at all in the Northern District of California. *Id.* Thus, while Network Signatures clearly resides in the Central District, it does not reside in the Northern District.

---

[1] Because SWIFT brings a declaratory relief action, the general venue provision, § 1391, applies rather than the specific venue provision for patent-infringement actions, 28 U.S.C. § 1400(b). *See, e.g., Emerson Electric Co. v. Black and Decker Mfg. Co.*, 606 F.2d 234, 238 (8th Cir. 1979).

14023.1                                    2

1   This means that under Section 1391(b)(1), venue would be appropriate in the Central
2   District, but not the Northern District. And because venue is appropriate in the Central
3   District, the third venue prong, Section 1391(b)(3)—which applies only if "there is no
4   district in which the action may otherwise be brought"—cannot apply here.

5   Thus, venue is proper in this Court only if the second venue prong, Section
6   1391(b)(2), is satisfied. That provision provides for venue in "a judicial district in which a
7   substantial part of the events or omissions giving rise to the claim occurred...." SWIFT
8   alleges in its complaint that this provision is satisfied. SWIFT is wrong. As noted above,
9   Network Signatures does not conduct any business in the Northern District; it has no
10  offices there; it has no employees there; it has no customers there.

11  Maybe most importantly, the acts that gave rise to SWIFT's declaratory relief
12  action—Network Signatures' patent-infringement action against an apparent SWIFT
13  customer—occurred in the Central District. *Id.* SWIFTs' avowed injury, then, is having to
14  face indemnity claims from the Central District, and that establishes that the Central
15  District is the appropriate venue for this dispute. There is nothing that ties Network
16  Signatures or SWIFT's declaratory relief claim to the Northern District.

17  Under Section 1391, the only proper venue for this action is the Central District of
18  California. This Court should therefore dismiss the action under Federal Rule of Civil
19  Procedure 12(b)(3) or transfer it to the Central District under 28 U.S.C. § 1406(a).

20  **III.  EVEN IF VENUE IS PROPER IN THE NORTHERN DISTRICT, THE**
21  **MATTER STILL SHOULD BE TRANSFERRED TO THE CENTRAL**
22  **DISTRICT**

23  Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in
24  the interest of justice, a district court may transfer any civil action to any other district or
25  division where it might have been brought." Thus, "the district court has discretion 'to
26  adjudicate motions for transfer according to an individualized, case-by-case consideration
27  of consideration and convenience.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498
28  (9th Cir. 2000). A motion to transfer venue under Section 1404 "requires the court to weigh

multiple factors in its determination whether transfer is appropriate in a particular case." *Id.* (listing factors).

### A. The convenience of the parties

When determining whether transfer is more convenient for the parties, the court should consider factors such as (1) the plaintiff's choice of forum, (2) the respective parties' contacts with the forum, (3) the contacts relating to the plaintiff's cause of action in the chosen forum, (4) the differences in the cost of litigation in the two forums, and (5) the ease of access to sources of proof. *See id.*

Here, most of those factors weigh in favor of a transfer to the Central District. Obviously, the plaintiff's choice of forum factor does not, but if this factor is given undue weight, transfer under Section 1404(a) is never possible. And on the other side of the ledger, Network Signatures has an almost complete lack of contact with the Northern District, and it has no contact whatsoever with the Northern District related to this dispute. Moreover, Network Signatures is located in Orange County, making it much more expensive for Network Signatures to litigate this matter in the Northern District. SWIFT, by contrast, is a Belgian company with headquarters in La Hulpe, Belgium, *see* Complaint at ¶ 2; for SWIFT, there is very little difference between litigating in the Northern and Central Districts. SWIFT is also a much larger company, and has far more resources to fly lawyers and witnesses to distant locations. *See id.* (SWIFT supplies its products to customers in more than 200 companies).

### B. The interest of justice

"The 'interest of justice' analysis relates ... to the efficient functioning of the courts, not to the merits of the underlying dispute." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986). "An important consideration in determining whether the interests of justice dictate a transfer of venue is the pendency of a related case in the transferee forum." *American Canine Foundation v. Sun*, 2006 WL 2092614 *3 (E.D.Cal. 2006) (citing *A.J. Industries, Inc. v. United States Dist. Court for Cent. Dist.*, 503 F.2d 384, 389 (9th Cir.1974) ("pendency of an action in another district is important" in determining whether

14023.1                                                                       4

to transfer)). Indeed, "[i]t is well-established that '[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" *Id.* (quoting *Continental Grain Co. v. The Barge FBL-585,* 364 U.S. 19, 26 (1960).

Here, SWIFT has sued because Network Signatures has filed lawsuits in the Central District, one or more of which apparently are against SWIFT customers who have sought indemnity from SWIFT. The vast majority of these related lawsuits have been sent to Judge James Selna for adjudication. Declaration of Peter Afrasiabi ("Afrasiabi Decl.") at ¶¶ 3-4. Judge Selna, then, has been tasked with deciding many similar issues to be resolved in this lawsuit, including, for example, infringement and validity. *Id.* Judge Selna has even resolved substantive motions regarding Network Signatures' rights under the patent license agreement, including whether Network Signatures has the right to sue for infringement. (Judge Selna's order allowing Network Signatures to pursue its infringement claims was affirmed by the Federal Circuit.) *Id.* It would be wasteful and unnecessary to have identical issues decided in different forums.

Currently, Judge Selna, utilizing the Northern District's patent rules, has set a *Markman* hearing in two of the cases for June 1, 2009.

Moreover, the convenience factor weighs in favor of the Central District over the Northern District. *Id.* at ¶ 5. SWIFT seems to even recognize this by clinging to the slenderest of reeds when it asserts that some of the defendants in the Central District may have offices in the Northern District. Even if true, it is totally irrelevant, and it is curious that even those defendants here did not seek to have venue moved to the Northern District because they had offices in the Northern District. Distilled, the only apparent reason for filing in the Northern District that Defendant can discern is that SWIFT's chosen lawyers are located in the Northern District—but inconvenience to those lawyers is hardly a reason to secure venue in the Northern District especially when the law firm has offices in the

Central District anyway and SWIFT did not have to hire lawyers in the Northern District—and because litigating the matter here will burden Network Signatures. *Id.*

Also, Defendant is located in the Central District so virtually all documents and other evidence will be located there (with some also possibly in Belgium), and most of the depositions will occur in the Central District also. And those that do not will occur in Washington (US government depositions) or Belgium (SWIFT depositions), neither of which has any relation to the Northern District. *Id.*

Thus, both for the convenience of the parties and the efficient functioning of the courts, SWIFT's action should be transferred to the Central District, where it will likely be assigned to Judge Selna.

## IV. CONCLUSION

For all of the foregoing reasons, this Court should dismiss SWIFT's action or transfer it to the Central District of California.

Dated: December 9, 2008

**TURNER GREEN AFRASIABI & ARLEDGE LLP**

By: /s/ Peter R. Afrasiabi
Peter R. Afrasiabi, Esq.
Attorneys for Defendant Network Signatures. Inc.

**DECLARATION OF HAZIM ANSARI**

I, Hazim Ansari, declare as follows:

1. I am a director and a shareholder of Network Signatures. I have personal knowledge of the facts stated herein and, if called to do so, could and would testify competently thereto.

2. Network Signatures' primary place of business is in Orange County, in the Central District of California. Indeed, this is Network Signatures' only place of business. All of Network Signatures' business activities take place within the Central District of California. Network Signatures does not have employees or offices in the Northern District of California. I am unaware of any Network Signatures customers in the Northern District of California. I have been overseeing Network Signatures since its inception, and I do not believe Network Signatures has ever conducted any business at all in the Northern District of California.

I declare the foregoing is true under penalty of perjury under the laws of the United States of America. Executed this 4th day of December, 2008 in Tustin, California.

_____
Hazim Ansari

# DECLARATION OF PETER AFRASIABI

I, Peter Afrasiabi, declare as follows:

1.  I am an attorney licensed to practice before this Court. I am one of the lawyers responsible for representing Network Signatures in this action and the related actions pending in the Central District of California. I have personal knowledge of the facts stated herein and, if called to do so, could and would testify competently thereto.

2.  My firm has filed 12 patent-infringement actions on behalf of Network Signatures in the Central District of California. All of these actions are based on United States Patent No. 5,511,122 (the '122 Patent), which belongs to the United States government, specifically the Department of the Navy, and Network Signatures' rights as the exclusive licensee of the '122 Patent.

3.  All of the actions in the Central District were at some point assigned to Judge James Selna. Six are currently pending. Judge Selna has recused himself from 2 of the currently pending actions, and Judge Selna retains jurisdiction over the remaining currently pending 4 cases. These pending matters put in controversy, among other issues, the validity of the '122 Patent and its infringement.

4.  Judge Selna has significant experience dealing with the '122 Patent and Network Signatures' infringement claims thereunder. Network Signatures' first infringement claim under the '122 Patent was filed in July 2006. Judge Selna oversaw that matter until it eventually settled in late 2007, after first making its way to the Federal Circuit Court of Appeal on a § 1292 certification appeal. Judge Selna has also decided motions to dismiss in the various infringement actions before him. Currently, Judge Selna, utilizing the Northern District's patent rules, has set a *Markman* hearing in two of the cases for June 1, 2009.

5.  If SWIFT's action continues in this Court, the same basic infringement and invalidity issues will be decided in two separate courts unnecessarily. In addition, allowing this matter to proceed in the Northern District makes very little sense because virtually all of the evidence and witnesses are elsewhere, largely in the Central District of California.

Those depositions that will not occur in the Central District are likely to occur in Washington (US government depositions) or Belgium (SWIFT depositions), neither of which has any relation to the Northern District.

I declare the foregoing is true under penalty of perjury under the laws of the United States of America. Executed this 9 day of December, 2008, California.

/s/ Peter R. Afrasiabi
Peter R. Afrasiabi